EXHIBIT
A

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| PARIJAT JOY, M.D. <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF IOWA, UNIVERSITY OF IOWA, IOWA BOARD OF REGENTS, <br><br> Defendants. | CASE NO. _____ <br><br><br> **PETITION AT LAW AND JURY DEMAND** |

**COMES NOW** the Plaintiff, Parijat Joy, M.D, through his undersigned counsel, and in support of his Petition at Law and Jury Demand against the State of Iowa, University of Iowa, and the Iowa Board of Regents, states:

## I.    INTRODUCTION

1. This is an action by the Plaintiff Parijat Joy, M.D. ("Joy") against the State of Iowa (the University of Iowa and the Iowa Board of Regents) alleging disability discrimination and retaliation in violation of both state and federal laws.

## II.    PARTIES

2. Joy was at all material times hereto a resident of Iowa City, Johnson County, Iowa and an employee of the State of Iowa.

3. The State of Iowa ("the State") is a sovereign state organized pursuant to the Constitution and the laws of the State of Iowa and was Joy's employer at all times material to the facts and circumstances giving rise to this matter.

4. The Iowa Board of Regents is a nine-member board organized pursuant to Iowa code chapter 262 responsible for governing the three state public universities in the state of Iowa, including the University of Iowa.

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter as the value exceeds the small claims jurisdictional amount.

6. Venue is appropriate in this court as the University of Iowa is located in Iowa City, Johnson County, Iowa and the acts central to this Petition occurred in Johnson County, Iowa.

### IV. FACTS

7. Plaintiff began his affiliation as a fellow in the Cardiovascular Disease Fellowship program ("the program") at the University of Iowa in July 2018. Prior to his acceptance in the Cardiovascular Disease Fellowship as a fellow in the program, Plaintiff had been employed by UIHC for several years as an Associate Physician, a Post-Doctoral Research Fellow, and was promoted to Assistant Clinical Professor in the Department of Internal Medicine.

8. In March of 2019, Plaintiff's minor child was diagnosed with a neuro-cognitive disability requiring immediate intensive treatment.

9. The treatment recommended to Plaintiff for his child was not available locally so Plaintiff and his family had to go out-of-state for treatment, necessitating accommodation amounting to flexible scheduling permitting travel for treatment.

10. In the immediate aftermath of informing the program of his need to be away for a period of time to seek treatment for his child, Plaintiff was met with conduct by faculty supervisors that constituted harassment and hostility.

11. Plaintiff registered complaints internally at the program about the hostile treatment to which he was subjected because he requested the accommodation.

12. As a result of the demands imposed by his child's diagnosis, in September of 2019, Plaintiff was forced to accept a nine-month leave without pay or benefits from his fellowship position to accompany his child to the only timely available treatment center located out of state.

13. Plaintiff's parenting obligations again intensified with the imposition of restrictions due to the emergence of the COVID-19 pandemic. During this period, Plaintiff offered to take on research obligations to fulfill this component of his training requirements and to maintain his insurance benefits and pay.

14. Defendants denied this request even though, upon information and belief, Defendants had previously allowed other fellows to use research electives to tend to the

needs of non-disabled family members, when such needs would affect their ability to do clinical work.

15. Immediately prior to beginning his period of leave, the Assistant Program Director, who had unfairly scrutinized Plaintiff during a prior incident, remarked to Plaintiff that it was difficult to complete a clinical fellowship with a disabled child with special needs, and therefore he should only do research, reflecting an obvious bias against Plaintiff.

16. Furthermore, during the height of the COVID-19 pandemic, Defendants reached out to its parent-employees and offered assistance to those who were having difficulty balancing their work with increased parenting duties. Plaintiff asked the program for assistance transporting his child to treatment appointments, which was summarily dismissed.

17. When Plaintiff's period of leave ended on June 30, 2020, Plaintiff recognized his child's ongoing treatment needs exacerbated by lack of outside support and wished to further a research project he was working on at the time. Plaintiff requested a 6 to 9-month research elective that had been scheduled for him prior to taking unpaid leave which would allow him to complete the research requirements of his training, while also giving him time to arrange for alternatives to tend to the treatment needs of his child while COVID-19 restrictions were phased-out.

18. Upon information and belief, this arrangement would not unreasonably burden the program, as there were more fellows in need of clinical work than what was available at the time. Such arrangements had been granted to Plaintiff's similarly situated peers in the past.

19. Despite having his chief fellow indicate that this accommodation would not be an issue, citing concerns over Plaintiff's clinical abilities during his first year of fellowship, the new program director retaliated against Plaintiff for exercising his rights under the ADA by denying Plaintiff's proposed accommodation and insisting that Plaintiff undergo intensive clinical rotations exclusively.

20. The program director then questioned the necessity of Plaintiff's child's treatments, stating that they were unlikely to provide any benefit, and suggested that Plaintiff change his career path.

21. Said concerns over Plaintiff's clinical abilities stemmed from a single letter written by a member of the faculty and endorsed by another faculty member to then program director during Plaintiff's first year of fellowship.

22. After Plaintiff had met with the then in-charge program director and explained his actions in February of 2019, the director informed Plaintiff that he was not the only one that the doctor who wrote the letter had unreasonably taken issue with, stated that Plaintiff did nothing of notable concern, stated that there would be no repercussions resulting from the letter, and stated that Plaintiff would not have to work

5

with the faculty member who wrote the letter in the future. The program director discouraged Plaintiff from formally disputing the letter, stating, falsely, that it would not be used against Plaintiff later.

23. The letter was the only documentation cited by the subsequent program director regarding Plaintiff's clinical abilities during his first year.

24. The subsequent program director falsely downplayed the majority of Plaintiff's first-year evaluations, which were positive, stating that they were "cursory" and therefore "not representative."

25. During the proceeding months, Plaintiff repeatedly asked for accommodations to enable him to transport his child to treatments.

26. The program either promised to help Plaintiff come up with solutions and then did nothing or denied his requests outright. Plaintiff was again forced to work with the letter-writing faculty member despite assurances from the prior director, predictably resulting in his actions being unfairly scrutinized.

27. Plaintiff was expected to perform at a higher level than his peers, despite receiving positive feedback and no objective concerns being cited during rotations.

28. Despite limited concessions by the program director allowing Plaintiff to leave work to take his child to treatments at certain times, Plaintiff was subsequently accused of absenteeism for doing so on several evaluations.

29. Beginning mid-January 2021, the program's campaign of bullying and harassment escalated to direct disability discrimination against Plaintiff himself after an accident in which Plaintiff fractured his dominant wrist.

30. The program denied Plaintiff temporary modification of his schedule to allow his wrist to heal and to ensure he could perform his duties.

31. The program then forced Plaintiff to work several rigorous rotations, which resulted in exacerbation of his injuries.

32. On March 5, 2021, the program's campaign of bullying and disability discrimination culminated with issuing Plaintiff a remediation notice indicating that his contract would not be renewed the following year.

33. The notice stated the program would "consider" renewing Joy's contract if he fulfilled certain conditions over the following months.

34. According to the program's own due-process policy, any period of remediation should precede, not follow, a notice of non-renewal.

35. On June 9, 2021, Plaintiff was predictably presented with a document affirming the program's decision not to renew his employment contract.

36. No major concerns had been brought to Plaintiff's attention during the remediation period, and Plaintiff had been led to believe that he had been performing adequately. Shown by the following non-exclusive list of examples, the cited justifications for non-renewal in the document were misleading and discriminatory:

    a. It faulted Plaintiff for not performing at a level above where he/his peers would be expected to perform during their second year of fellowship;

    b. provided overly vague justification and/or nitpicked Plaintiff for incidents that were routinely overlooked when committed by his peers, which were not brought to Plaintiff's attention previously;

    c. falsely claimed that Plaintiff lacked medical knowledge;

    d. falsely accused Plaintiff of being unprofessional and poor at communication, when he had been commended on these qualities in the past; and

    e. misrepresented the majority of Plaintiff's evaluations as being negative.

37. Defendants' stated reasons for non-renewal were pretextual.

38. On June 18, 2021, Plaintiff appealed the decision to not renew Plaintiff's contract pursuant to departmental policy.

39. As part of the appeal process, the departmental committee questioned Plaintiff in detail on July 29, 2021, and reported its findings on Aug 31, 2021.

40. In its report the departmental committee pointed out numerous flaws of the remediation plan including, inflated milestone requirement of $\geq 3.5$ higher than that required of ACGME for second year fellows (2.5 - 3.5), unrealistic expectation of conference attendance (80-95% compared to 50% for peers), unreliable data gathering for conference attendance, and also concluded that Plaintiff's performance was satisfactory

per established clinical guidelines in multiple critical scenarios that were alleged as mismanagement by the program director.

41. Pursuant to standard ACGME guidelines, the departmental committee also recommended providing Plaintiff an individualized learning plan, a faculty mentor, a communications course, and "adding a member from outside the division to offer an unbiased view of the trainee's progress."

42. The program director disregarded all above findings and recommendations in upholding his prior decision to terminate Plaintiff's training evidencing further discrimination and in retaliation against Plaintiff's internal complaints and charge of discrimination filed with the EEOC

43. Plaintiff has been denied accommodations, denied equal treatment, been subjected to a hostile environment and has been retaliated against for engaging in protected activity, including but not limited to the agency initiating investigations against the Plaintiff, denying him reasonable accommodations, and discharging him from employment.

## VI.  CAUSES OF ACTION

**COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

44. Plaintiff incorporates paragraphs 1 through 43 of this Petition as if fully set forth herein.

9

45. Under the provisions of the Americans with Disabilities Act (ADA), it is unlawful for an employer or person to discriminate against an employee on the basis of his or his child's disability.

46. Plaintiff is protected because of his arm impairment and because his child has a neuro-cognitive disorder that is recognized as an impairment that substantially limits one or more major life activities.

47. Defendants discriminated against Plaintiff with respect to his terms and conditions of employment by not accommodating Plaintiff's impairment and not accommodating him in caring for the known disability of his child, by subjecting him to a hostile environment, and not renewing his contract in violation of the ADA.

48. Plaintiff suffered an adverse employment action when he was denied accommodations, suffered a hostile environment, and terminated from employment through the non-renewal of his contract.

49. A causal connection exists between Plaintiff's disability and his child's disability and the adverse employment action.

50. As a proximate result of Defendants' actions, as outlined above, Plaintiff has in the past and will in the future suffer lost wages, mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, and damages.

51. Plaintiff requests relief as set forth more fully below.

### COUNT II – RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILTIES ACT

52. Plaintiff incorporates paragraphs 1 through 51 of this Petition as if fully set forth herein.

53. Under the Americans with Disabilities Act it is unlawful for an employer to retaliate against an employee because they have engaged in protected activity under either law.

54. Plaintiff engaged in protected activity by requesting accommodation for his child's disability.

55. Defendants retaliated against Plaintiff by, among other things, harassing him, creating a hostile work environment, subjecting him to heightened scrutiny and standards, disciplining him, and not renewing his contract in violation of the Americans with Disabilities Act.

56. A causal connection exists between Plaintiff's conduct and the adverse employment actions.

57. As a proximate result of Defendants' actions, as outlined above, Plaintiff has in the past and will in the future suffer lost wages, mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, and damages.

58. Plaintiff requests relief as set forth more fully below.

## VII.  RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment and seeks lost wages past and future, emotional distress past and future, attorney fees and

Case 3:25-cv-00033-SHL-SBJ   Document 1-2   Filed 04/03/25   Page 12 of 19
E-FILED  2024 DEC 16 9:51 AM JOHNSON - CLERK OF DISTRICT COURT

costs, an award of pre-judgment interest as provided by law, and such other and additional relief as the Court may deem just and proper.

## VII. JURY DEMAND

Plaintiff hereby demands a jury trial for all claims alleged herein.

Respectfully submitted,

*[signature]*

Michael J. Carroll – AT0001311
CARNEY & APPLEBY LAW FIRM
400 Homestead Building
303 Locust Street
Des Moines, IA 50309
Phone:	515-282-6803
Fax: 515-282-4700
Email: mike@carneyappleby.com

ATTORNEYS FOR PLAINTIFF

*Original e-filed*

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| PARIJAT JOY, M.D.<br><br>      Plaintiff,<br><br>vs.<br><br>STATE OF IOWA, UNIVERSITY OF IOWA, IOWA BOARD OF REGENTS,<br><br>      Defendants. | CASE NO. _____<br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:

    YOU ARE HEREBY NOTIFIED that a Petition has been filed in the office of the Clerk of this Court, naming you as a Defendant in this action. A copy of this Petition (and any documents filed with it) is attached to this notice. The attorney for the Plaintiff is Michael J. Carroll, 400 Homestead Building, 303 Locust Street, Des Moines, Iowa 50309. That attorney's phone number is 515-282-6803; facsimile number 515-282-4700.

    You must serve a motion or answer within 20 days after service of this Original Notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County at the County Courthouse in Des Moines, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition.

    This case has been filed in a county that utilizes electronic filing. General rules and information on electronic filing are contained in Iowa Court Rules Chapter 16. Information regarding requirements related to the protection of personal information in court filings is contained in Iowa Court Rules Chapter 16, Division VI.

    If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at 515-286-3394. If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.

**IMPORTANT:  YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.**

# Iowa Judicial Branch

Case No. **LACV085932**
County **Johnson**

Case Title   PARIJAT JOY, M.D. V. STATE OF IOWA, ET AL.

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(319) 398-3920** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

Date Issued   **12/16/2024 03:07:41 PM**



District Clerk of Court or/by Clerk's Designee of  Johnson         County
 /s/ Christine Roselund

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| PARIJAT JOY, M.D.<br><br>    Plaintiff,<br><br>vs.<br><br>STATE OF IOWA, UNIVERSITY OF IOWA, IOWA BOARD OF REGENTS,<br><br>    Defendants. | CASE NO. LACV085932<br><br><br>**ACCEPTANCE OF SERVICE** |

COMES NOW, the undersigned, and hereby acknowledge receipt and accept service of the Original Notice and Petition and Jury Demand on behalf of the Defendants, State of Iowa, University of Iowa, and Iowa Board of Regents, effective March 4, 2025.

    Respectfully submitted,
    BRENNA BIRD
    Attorney General of Iowa

    /s/ Jeffrey Peterzalek
    JEFFREY PETERZALEK AT0006274
    Deputy Attorney General
    Assistant Attorney General
    Agency Counsel Division
    1305 East Walnut St., Second Fl.
    Des Moines, Iowa 50319
    Ph: (515) 281-5112
    Email: jeffrey.peterzalek@ag.iowa.gov
    ATTORNEYS FOR DEFENDANTS

All parties served via EDMS on this
4th day of March, 2025.

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| PARIJAT JOY, M.D.,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF IOWA, UNIVERSITY OF IOWA, and IOWA BOARD OF REGENTS,<br><br>    Defendants. | Case No. LACV085932<br><br><br>NOTICE OF APPEARANCE |

**COMES NOW**, Chad Brakhahn, and enters his appearance on behalf of Defendants State of Iowa, University of Iowa, and Iowa Board of Regents.

Respectfully submitted,

**BRENNA BIRD**
Attorney General of Iowa

***/s/ Chad D. Brakhahn***
CHAD D. BRAKHAHN – AT0010883
Assistant Attorneys General
Department of Justice
Hoover State Office Building, 2nd Floor
Des Moines, IA 50319
Ph:     (515) 281-5164
chad.brakhahn@ag.iowa.gov

ATTORNEY FOR DEFENDANTS

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on March 11, 2025:

☐ U.S. Mail            ☐ FAX
☐ Hand Delivery        ☐ Overnight Courier
☐ Federal Express      ☐ Other
☒ ECF System Participant (Electronic Service)

Signature: */s/ Julie Sander*

---

1

IOWA DISTRICT COURT IN AND FOR JOHNSON COUNTY

| | |
|---|---|
| PARIJAT JOY MD<br><br>Plaintiff(s)/Petitioner(s),<br><br>VS.<br><br>STATE OF IOWA<br>UNIVERSITY OF IOWA<br>STATE OF IOWA BOARD OF REGENTS<br><br>Defendant(s)/Respondent(s). | CASE NO: 06521  LACV085932<br><br>**NOTICE OF CIVIL TRIAL-<br>SETTING CONFERENCE** |

To the parties or their attorneys of record:

In accordance with Iowa Rule of Civil Procedure 1.906, notice is hereby given that a **Trial Scheduling Conference is scheduled on 04/29/2025 at 10:30 AM at the Johnson County Courthouse, Iowa City, Iowa.**

This date shall be no earlier than 35 days after and not later than 50 days after any Defendant/Respondent has answered or appeared unless set sooner by special order on application of one or more parties.

This conference shall be held:
By **TELEPHONE** with the conference call to be initiated by Plaintiff(s).  The court administrator shall be connected to the call at 319-356-6070, Ext. 3313.

Attorneys for all parties appearing in the case shall participate at this conference as well as unrepresented defendants who have also appeared.

At this trial-setting conference, every case will be set for trial within the time periods provided by Iowa Court Rules Chapter 23, Time Standards for Case Processing.

**Prior to the trial-setting conference, the parties must file a Trial Scheduling and Discovery Plan, Iowa Court Rule 23.5-Form 2 (Form 3 for Expedited Civil Actions).**

The trial date that is agreed upon at this conference shall be a firm date.  Continuances will not be granted, even if all parties agree, unless for a crucial cause that could not have been foreseen.

The Clerk of Court shall notify all counsel of record and parties not represented by counsel.

Dated 03/19/25

If you need assistance to participate in court due to a disability, call the disability coordinator at (319) 398-3920 or information at https://www.iowacourts.gov/for-the-public/ada/. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**



State of Iowa Courts

**Case Number**     **Case Title**
LACV085932          PARIJAT JOY, M.D. V. STATE OF IOWA, ET AL.
**Type:**           ORDER FOR TRIAL SCHEDULING CONFERENCE

So Ordered

Erica Beason, Case Coordinator,
Sixth Judicial District of Iowa

Electronically signed on 2025-03-19 16:01:43